Judge Roane
(after stating the case) pronounced the following opinion of the Court:
If the pleas of the appellee should even be adjudged to be bad, yet, upon the principle of going up to the first fault, judgment would still be rendered against the appellant, if, on the case made by his declaration, he has no right to recover; and it is evident that his right may be much weaker under the declaration than under the pleas, as the latter do not exclude (as the former does) *591 the Idea of his having been still a citizen of this com-moil wealth, at the time he offered to vote. We infer this diversity, from its being stated in the declaration that the appellant was inhabiting within the district of Columbia at the time of its separation from this commonwealth ; he was consequently expatriated thereby from the government of Virginia.
The act of Virginia, on the subject of expatriation, relates only to individual cases; it does not relate to those public and general acts of expatriation, by cession, or otherwise, which are more or less incident to all governments and countries. With respect to the particular cession now in question, it was contemplated and provided for by the constitution of the United States, agreed to by the commonwealth of Virginia, by its act tendering the territory to the general government, and also by the congress of the United States, who accepted the cession. To all these acts the appellant, by his representatives, was a party. He has therefore, no reason to complain that he has been cut off from the dominion of Virginia, in consideration of, perhaps, adequate advantages. That he is no longer within the jurisdiction of the commonwealth of Virginia, is manifest from this consideration, that congress are vested, by the constitution, with exclusive power of legislation over the territory in question; and it is only by the consent and courtesy of congress that any of the laws of Virginia have been permitted to operate therein. This last fact will be fully manifested by recurring to the several acts of congress on the subject. It follows, that the district of Columbia being without the jurisdiction of the laws of Virginia, is, as to it, another and distinct jurisdiction, and that the appellant is not merely a citizen of Virginia, abiding, or inhabiting therein, but passed, with that territory, from the jurisdiction of this commonwealth, by the act of cession, and owes no allegiance thereto. It might well, therefore, be true, that the case made by the pleas might be in favour of the appellant, and yet that he is prohibited *592 from recovering, upon the weaker ground of claim ad? Emitted by his own declaration.
With respect to the right of a citizen, or subject, of a foreign government,to intermeddle with the civil polity of Virginia, and, especially, to exercise the all-important function of legislation, the matter cannot admit of a possible doubt. Such subjects, or citizens, cannot exercise this inestimable right, as they owe to the commonwealth no corresponding duties, and would not be amenable to the laws by them enacted. They cannot exercise this right in person, for their personal attendance may be necessary, at the same time, in their own country; and, besides, ,in time of war, they would be prohibited from coming here for the purpose. In some small democracies, the people have exercised the legislative power in person ; and this principle is not lost sight of, when, owing to the extent of the territory, or the numbers of the people, they are compelled to exercise that power by means of deputies; This necessity of acting by agents does not change the principle ; does not let . in, to the appointment of spch deputies, persons who, but for the necessity aforesaid, would be inhibited from acting in their primary and original character. In other words, ndne are competent to legislate mediately, by their representatives, but those who would be admitted, but for the impediments aforesaid, to exercise the right in person?
It follows, írom these premises, that before this great principle .shall be departed from, it ought, at least, manifestly to appear, from the act of government itself, that an exception has been explicitly assented to by the people ; in a case in any degree equivocal, the general principle would undoubtedly turn the scale.
There is no such exception to be found in the consti? tution of this commonwealth. That instrument, and the declaration of rights on which it is based, has no eye towards the subjects of foreign powers. It only purports 'to declare the rights, and settle the duties of those whe¡ *593 are parties to the compact. There is not only no such exception in that instrument, but, on the contrary, the converse is explicitly declared and expressed. The declaration of rights is stated to have been made by the representatives “ of the good people of Virginia,” and it is declared, “ that these rights do pertain to them, and their posterity, as the basis and foundation' of government.” This instrument, therefore, can never be construed to bestow the inestimable right of suffrage upon aliens and enemies, who have no “ permanent common interest with, or attachment to,” this community j who owe paramount and conflicting duties to other sovereigns ; who have superior attachments in other countries ; and who, from their residence elsewhere, cannot perform duties which imply the necessity of a residence within this commonwealth. On the case made by the declaration, therefore, the appellant is, clearly, not entitled to recover.
With respect to the ground supposed to be taken by the pleas as aforesaid; while we are free to admit that it is weaker for the appellee than that made by the declaration, which admits the appellant to be no citizen, and leaves a great discretion to the officer, as to the fact of a foreign residence ; we are of opinion, that the provision of the act of 1808, in relation to it, is in consonance with the principles of the constitution. As the constitution is to be construed, as aforesaid, only in reference to our own citizens ; so, such of them are not embraced by its provisions in favour of the right of suffrage, who, through absence, are disabled from performing the duties in question ; whose other ties of allegiance, temporary or perpetual, are thrown into a scale conflicting with their duties and allegiance to this commonwealth, and whose foreign residence diminishes their former “ common interest with, and attachment to,” this commonwealth.
Persons standing in this predicament cannot be admitted to the right of suffrage, without running counter *594 to all the principles on which that right is founded. As well might a resident citizen claim to vote, after he had parted with that fretehpld which guarantied his attachment tb the community.
In thus deciding against the right of the appellant, upon the general principles just mentioned, the Court is, by no means, disposed to admit, that that result would be varied by any of the legislative provisions upon the subject. On the contrary, a recurrence to the various acts in our code, apeient and modern, will manifestly show that'they are jn strict conformity therewith. On every ground, therefore, the judgment of the Court below is correct, and ought to be affirmed.
In taking this view of the subject, the Court has neither considered nor decided the question, whether an action will lie against a sheriff for refusing to receive the vote of a person duly qualified; and much less has it decided, whether such action would lie against an officer, acting in obedience to a legislative act, found to be in conflict with the constitution. While this last case can rarely be expected to' opeqr, its importance would require the mpst serious and deliberate consideration $ and, even with respect to the first, it cannot often be expected to arise, under all the care which is taken by our constitution and laws to define, explicitly, the rights and qualifications of the electors.. Whenever either question, however, shall qccur, and become necessary to be decided, the Court will nqt shrink from the inve^tigafiqn and decision {hereof.